IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH D.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 2827 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i), 423, in June of 2019. (Administrative Record (R.) 21-14). He claimed that he became disabled as of February 15, 2019, due to over two dozen impairments, including depression, asthma, migraines, arthritis in his hands, ankles, and back, bulging discs in his back, and neuropathy in both legs. (R. 211, 245). He is also obese, with a BMI of 35.9 to 37. (R. 16, 245). Over the next year or so, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on April 24, 2020. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on May 14, 2020. [Dkt. #6]. Plaintiff asks the court to remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

# I.

## A.

Plaintiff was born on November 11, 1970, and so was over 49 years old at the time of the ALJ's decision on February 6, 2020. (R. 211, 10-28). He served for 20 years in the military from 1995 through 2015, and moved from job to job for a few years after that. (R. 236-38, 254-60). He was rendered unconscious in an explosion while serving in Afghanistan back in 2009-10. (R. 80, 596). Since then, he has endured headaches, tinnitis, and vertigo. The incident also left him with a cognitive disorder and memory loss. (R. 597-98). His was discharged in 2015 with a 100% permanent and total disability rating. (R. 227).

Obviously, given injuries as serious as that, the medical record in this case is massive, over 2000 pages long. (R. 334-2375). But, as is usually the case, very little of it is relevant to plaintiff's disability claim. The plaintiff directs the court to 28 pages of psychiatric medical evidence and 27 pages of physical medical evidence. [Dkt. #16, at 2-5]. Thus, we can dispense with an extended summary of the entire medical record and focus on that evidence plaintiff singles out as supporting his claim

On June 22, 2015, plaintiff underwent a psychological evaluation at the Veterans Administration (VA) Hospital. (1119-1129). During the examination, plaintiff had significant difficulty providing straightforward responses, and his mood was noted to be generally anxious and depressed. (R. 1128). His affect was observed to be flat to irritable. (R. 1128). Plaintiff reported difficulty with memory and concentration. (R. 1129). Diagnosis was persistent depressive disorder, mild. (R. 1129-30). The examiner found plaintiff to have an occupational and social impairment with occasional decrease in work efficiency and intermittent inability to perform tasks. (R. 1131).

After that, the picture got a bit brighter. In March 2016, plaintiff underwent a neurological evaluation at the VA for headaches, dizziness, memory loss, and depression. (R. 592-595). Plaintiff reported mild memory loss, tinnitus, insomnia, daily headaches. (R. 597-98). Judgment, orientation, and social interaction were normal. (R. 596). Headaches were the main problem affecting his ability to work. (R. 599). The neurologist attributed Plaintiff's headaches and dizzy spells to his traumatic brain injury in 2009, and his memory problems and depression to his PTSD or ADHD or bipolar disorder. (R. 599-600).

In January, February, March, May, and July 2019, mental status examinations conducted during regular treatment visits at the VA Hospital revealed consistently normal affect and no mood disturbances. (R. 349, 507, 514, 517, 714). In April 2019, plaintiff denied any depression or anxiety. (R. 342). At the beginning of the session, he was guarded and upset, but behavior was then noted to be normal. Attention and concentration were intact; insight was good, and judgment was intact. (R. 343). He was noted to be stable on medication. (R. 343). In June, he again denied any depressive symptoms and reported that the medication was working. He was working and denied any problems with regard to that. (R. 728). Mental status examination was normal, including attention and concentration. (R. 729).

Plaintiff also has a history of back and joint pain. In January of 2018, x-rays of his left hand revealed mild joint space narrowing and osteophyte formation. (R. 1614). In August 2018, plaintiff was diagnosed with chronic pain syndrome, pain in the right shoulder, and pain in the hip, unspecified. (R. 1673). His medications list included oxycodone, celecoxib, omeprazole, and lisiniprol. (R. 1672). Hip x-rays at that time showed mild osteophytic changes and joint space narrowing. (R. 1612). In September 2018, several months before he became unable to work, he was

noted to have general, bilateral limited mobility. (R.1666). In November 2018, an MRI of his lumbar spine revealed mild degenerative arthritis of the facet joints at L3-4 and L4-5. (R. 375). In December 2018, plaintiff's orthopedic surgeon noted some improvement in plaintiff's pain, and recommended he continue with medication management. R. 2359.

In February 2019, treatment notes indicate plaintiff was complaining of general body pain, although he experienced some relief with weekly acupuncture treatments. (R. 1643). The doctor noted plaintiff's mobility was limited. (R. 1644). The following month, he was noted to be suffering from chronic pain syndrome. (R. 1635). But, treatment notes at that time indicate mobility was not limited. (R. 1641). In May, July, August, and September 2019, however, plaintiff's general bilateral mobility was again noted to be limited. (R. 1616, 1621, 1624, 1631). Right knee x-rays in July 2019 demonstrated that the reconstructive surgery was aligned well, with moderate joint space loss and effusion. (R. 1621).

In August 2018, x-rays of plaintiff's right shoulder revealed moderate right glenohumeral arthritic changes and stable periarticular changes of the acromioclavicular joint. (R. 1613). Left shoulder x-rays at that time revealed moderate arthritis of the glenohumeral and acromioclavicular joints. (R. 1611). Lower back x-rays were essentially normal aside from mild arthritic changes at L3-L5. (R. 1608). Plaintiff had injections in both shoulders in September 2018. (R. 780, 782). Examination at that time revealed mild tenderness in both shoulders. (R. 781).

On July 16, 2019, plaintiff underwent a consultative internal medicine examination with Dr. Jorge Aliaga arranged by the Bureau of Disability Determination Services. (R. 737-742). The doctor observed plaintiff to be "in a depressed mood" but had a "good attitude and demeanor." (R. 739). Upper extremities had full range of motion throughout. (R. 740). In the lower extremities there was

4

limited range of motion in the left hip and right knee. (R. 740). There was no joint swelling or tenderness. (R. 740). Lumbar spine range of motion was normal and straight leg raising was negative. (R. 740). Gait was slow, with a right-sided limp. (R. 740). Grip strength and manipulation were normal. (R.741). Recent and remote memory were intact, and reasoning, comprehension and concentration were normal. (R. 741).

On January 13, 2020, Francis Hartge, M.D., whom plaintiff's brief calls his treating physician [Dkt. # 16, at 5], completed a physical residual functional capacity evaluation provided by plaintiff's counsel. (R. 2374-2375). Dr. Hartge said she had first seen plaintiff just a couple of months earlier, on November 13, 2019. (R. 2374). There are no treatment notes from her in the record. Her diagnoses was lumbar spine arthritis, bilateral knee arthritis, right shoulder arthritis, and bilateral hip arthritis. The prognosis was guarded. (R. 2374). The doctor said plaintiff could sit for only 20 minutes at one time, and stand or walk for 10. (R. 2374). In an eight-hour day, she opined that plaintiff could sit for a total of two hours, stand or walk for a total of two hours as well, and would need to take frequent breaks during the day for 20 minutes at a time to change position or to lie down. (R. 2374). She indicated that with prolonged sitting, plaintiff's legs should be elevated above the knee. (R. 2374). Dr.Hartge felt that plaintiff could occasionally lift less than ten pounds, and reach in any direction with his right upper extremity 30 per cent of the time, and 40 per cent of the time with his left. (R. 2375). She said that plaintiff would likely be absent about one day per month as a result of his impairments or treatment. (R. 2375). She said her opinion was based on history, MRIs and orthopedic and physical therapy notes. (R. 2375).

**B.**

After an administrative hearing at which plaintiff, represented by counsel, appeared and

5

testified and a vocational expert also testified, the ALJ found that plaintiff was not disabled under the Social Security Act. The ALJ determined the plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of both shoulders, degenerative joint disease of the right hip, history of asthma, obesity, depression, anxiety, and attention deficit hyperactivity disorder. (R. 15). The ALJ found the plaintiff's history of left hip replacement, right knee surgery, migraines, and sleep apnea to all be non-severe impairments. (R. 16). The ALJ further found that none of the plaintiff's impairments, individually or in combination, met or equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, focusing on Listings 1.02 (dysfunction of a major joint), 3.03 (asthma), 12.04 (depressive, bipolar, and related disorders), 12.06, and 12.11. (R. 17).

The ALJ then determined that plaintiff could perform light work, with a long list of additional limitations: occasionally climb ramps and stairs, ladders, ropes, or scaffolds; occasionally kneel, stoop, crouch, crawl, and balance; avoid concentrated exposure to vibrations, pulmonary irritants, and hazards, including dangerous moving machinery, and unprotected heights; frequently reach overhead with his nondominant left upper extremity; can understand, remember, and carry out instructions for simple routine and repetitive tasks with sufficient concentration, persistence or pace to timely and appropriately complete such tasks and with occasional contact with coworkers, supervisors, and the general public. (R. 18). The ALJ then found that the plaintiff's "medically determinable impairments could cause some of the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 19).

The ALJ found the opinion of plaintiff's treating physician "not persuasive." The ALJ said the doctor failed to support his opinion with citations to the medical evidence, and that his opinion was inconsistent with the unremarkable treatment notes. (R. 21). The ALJ found the opinions of the two agency physicians who reviewed the physical medical evidence to be persuasive because they supported their opinions with discussions of the medical evidence and their opinions were consistent with the record as a whole. (R. 21). Conversely, the ALJ found the opinions of the two agency physicians who reviewed the psychological medical evidence and concluded that plaintiff had no severe mental impairment not persuasive because the record, including the claimant's hearing testimony, shows that plaintiff had more than mild functional limitations. (R. 21). The ALJ rejected the 100% disability rating from the Veteran's Administration, explaining that disability determinations of other agencies are not to be considered when determining a person's disability *under the Social Security program*, and that the rating was not based on a functional analysis of the claimant's limitations and capabilities. (R. 22).[2]

The ALJ considered the vocational expert's testimony, agreeing with her that plaintiff could no longer perform her past work because it was skilled. (R. 22). Adopting the vocational expert's testimony on what work the plaintiff could perform given her RFC, the ALJ found that the plaintiff could perform the jobs of marker (DOT 209.587-034, 137,000 jobs in the national economy), routing clerk (DOT 222.687-022, 57,000 jobs), or mail clerk (DOT 209.687-026, 36,000 jobs). (R. 23).

---

[2] Plaintiff complains that the ALJ had to consider the VA's finding along with the evidence upon which it was based, citing *Bird v. Berryhill*, 847 F.3d 911, 913 (7th Cir 2017) [Dkt. #16, at 15]. But both *Bird* and plaintiff's argument are not applicable in claims filed after March 27, 2017. *See* *See* 20 C.F.R. § 404.1504a. The current regulation, 20 C.F.R. § 404.1504, provides that "in claims filed (see §404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." *See Bird*, 847 F.3d at 913.

7

Accordingly, ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 24).

## II.

If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The "substantial evidence" standard is a low hurdle to negotiate, *Biestek*, 139 S. Ct. at 1154. In the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result in order to afford the claimant meaningful judicial review of the administrative findings. *Fair v. Saul*, _F.Appx._, 2021 WL 1711810, at *4 (7th Cir. 2021); *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be

remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)("...we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).

### III.

### A.

The plaintiff makes a number of arguments he contends require overturning the ALJ's decision denying him benefits. We find certain problems with the ALJ's decision that require remand, and thus we shall focus on those. First, there is psychological portion of the RFC. The ALJ found that the plaintiff suffered from mild limitation in understanding, remembering or applying information, and moderate limitations in interacting with others and concentrating, persisting or maintaining pace. (R. 17). The ALJ determined that the plaintiff could nevertheless "understand, remember, and carry out instructions for simple routine and repetitive tasks with sufficient concentration, persistence or pace to timely and appropriately complete such tasks and with occasional contact with coworkers, supervisors, and the general public." (R. 18). But how the ALJ got from point A to point B is the question.

The guidance on review of ALJ's accommodations of limitations stemming from

psychological impairments – most often in "concentration, persistence, and pace" or "CPP" cases – is somewhat nebulous, especially when combined with the "logical bridge" requirement, and that makes review of ALJ's decisions in this area difficult and provides fertile ground for reversal. On the one hand the Seventh Circuit has said that "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019). *Accord O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016). But, in other cases, the court has found that a plaintiff with a moderate restriction on concentration, persistence, and pace can perform simple, repetitive work. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009) (claimant with deficiencies in concentration, persistence, or pace can perform semiskilled work); *Sims v. Barnhart*, 309 F.3d 424, 431 (7th Cir. 2002) (claimant with moderate limitations in concentration, persistence, or pace can perform "simple and repetitive light work"). And, more specifically, the court has found it acceptable for an ALJ to translate a moderate restriction into a quota or pace limitation where the ALJ draws it from the narrative assessment of a doctor. *See, e.g., Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *Baldwin v. Berryhill*, 746 F. App'x 580, 584 (7th Cir. 2018). Or, where the ALJ attempts to trace it from a claimant's testimony regarding what distracted her or gave her problems concentrating. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020); *Kuykendoll v. Saul*, 801 F. App'x 433, 438 (7th Cir. 2020).

Here, however, the ALJ offered little explanation that would allow a reviewing court to trace the path of reasoning from the mild to moderate limitations to "simple, routine and repetitive tasks . . . and occasional contact with coworkers, supervisors, and the general public." First of all, there

is no opinion from a reviewing psychiatrist or psychologist in which to ground those accommodations. The ALJ flatly rejected the opinions of both state agency reviewers. (R. 22). *See, e.g., Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *Baldwin v. Berryhill*, 746 F. App'x 580, 584 (7th Cir. 2018). *Compare Pavlicek v. Saul*, No. 20-1809, 2021 WL 1291614, at *4 (7th Cir. Apr. 7, 2021)(". . . the ALJ reasonably relied on the [agency reviewers'] narrative RFC because it was in fact consistent with the "moderate" checklist ratings"). So, that leaves the questions: how do simple, routine and repetitive tasks account for a moderate limitation in concentration and how does occasional contact with coworkers, supervisors, and the general public account for a moderate limitation in social interaction?

The ALJ said only that it was appropriate to "restrict[ ][plaintiff] to simple repetitive work with social limitations to accommodate his complaints of stress and anxiety in dealing with others." That is not an explanation; it is more of an *ipse dixit*. Without any basis in medical opinion, what was needed here was something more along the lines of what the Seventh Circuit condoned in *Martin,* which endorsed an item by item connection of accommodation to alleged limitations:

> Start with concentration. The second ALJ found that "[Martin] could maintain the concentration required to perform simple tasks, remember simple work-like procedures, and make simple work-related decisions." Moving to persistence, the ALJ, in defining and tailoring the RFC, further determined that Martin could stay on-task and thereby "meet production requirements." Of course, even if someone is on-task, it is still possible she may operate at such a slow pace that an employer would not find her work satisfactory. Hence, the second "P"—pace—must enter the equation. The ALJ incorporated pace-related limitations by stating that Martin needed flexibility and work requirements that were goal-oriented.

950 F.3d at 374. In *Gwendolyn B. v. Saul*, the ALJ went even further:

> Accepting that the claimant did experience some degree of lupus - and fibromyalgia-related problems with memory and concentration it was reasonable to limit her too occupations that required completion of no more than simple, routine

11

> tasks. To avoid distraction, the work setting should require no more than occasional and minor changes. In her first Function Report, she wrote that she generally could handle stress but in the second report that was submitted seven months later the claimant declared she did not handle stress or change in routine well. Giving her the benefit of the doubt and accepting she had some increased difficulty responding to stress the claimant was limited to work that required no more than making simple decisions and exercising of no more than simple judgment.
>
> In the second hearing the claimant testified that she had avoided people after being diagnosed with fibromyalgia. There was no evidence that suggested she was exhibiting isolative behavior, but in the current hearing she did testify to increased anxiety in public places. The claimant also testified that she became angry very easily. To help limit her interaction with individuals in the workplace, the claimant was precluded from occupations that involved direct public service, in person or over the phone but she could tolerate brief and superficial interaction with the public incidental to her primary job duties. The claimant was also limited to brief and superficial interaction with supervisors and co-workers.

*Gwendolyn B. v. Saul*, 2021 WL 1812879, at *10 (N.D. Ill. 2021). We are not saying that every ALJ has to provide something along those lines. After all, the Seventh Circuit has steadfastly refused to require any specific phrasing in CPP case after CPP case. *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Winsted*, 923 F.3d at 477. But there is nothing remotely like the rationale provided in *Gwendolyn B*. – or the less detailed explanation in *Martin* – from the ALJ in this case. And, while the Seventh Circuit does not demand magic words – as the Commissioner points out [Dkt. #19, at 7], it does demand a "logical bridge" between the evidence and the limitation. There isn't a satisfactory one here.

**B.**

Second, there is the physical portion of the RFC. The ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of the bilateral shoulders; degenerative joint disease of the right hip; obesity. The ALJ also noted that the plaintiff had nonsevere impairments: a history of left hip arthroplasty and right knee

12

surgery. The ALJ determined that these impairments allowed plaintiff to perform work that required him to stand or walk for six hours of every day, and frequently reach overhead with only his non-dominant left arm, and, in fact, climb ramps and stairs, ladders, ropes, scaffolds and kneel, stoop, crouch, crawl up to one-third of every day. The ALJ explained:

> However, the objective imaging of the claimant's lower back and other joints is unremarkable. There is no evidence of stenosis or nerve root involvement in his back, and the osteoarthritic changes in his hip and shoulders are of no more than mild or moderate severity (1F/42, 48, 49; 9F/793). His examinations are within normal limits other than some undefined "limited mobility" noted on several occasions (3F/112, 115; 5F/17; 9F/50, 65). Doctors treat the claimant's symptoms conservatively with pain medication.

(R. 18).

It is often said that courts are to take a common-sense approach to reviewing an ALJ's decision. *See, e.g., Winsted*, 923 F.3d at 478; *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). But, with all deference, we struggle to see the common sense here. The ALJ determined that a 50-year old obese man, who suffered traumatic injuries in an explosion while serving his country, with degenerative arthritis in his arms, knees, hips and lower back, could nevertheless stand and walk for six hours every day. Worse, the ALJ thought that this individual – with a screw in his right knee, an artificial left hip, degenerative arthritis in his other hip, and severe degenerative arthritis in his lower back – could climb ramps and stairs, ladders, scaffolds, and kneel, stoop, crouch, crawl up to about two hours every day. But the finding that eludes explanation is how the plaintiff – who the ALJ found was obese and had severe bilateral shoulder arthritis such that he could only reach overhead with his nondominant left arm – is supposed to climb a rope up to two hours a day; or for that matter, once a week or once a month. The RFC finding puts one in mind of the Seventh Circuit's criticism of a similar finding in *Goins v.*

13

*Colvin*, 764 F.3d 677, 682 (7th Cir. 2014):

> If we thought the Social Security Administration and its lawyers had a sense of humor, we would think it a joke for its lawyer to have said in its brief that the administrative law judge "accommodated [the plaintiff's] obesity by providing that she could never [be required as part of her work duties to] climb ladders, ropes, or scaffolds, and could only occasionally climb ramps or stairs, balance, kneel, crawl, stoop, and/or crouch." (The administrative law judge must have forgotten that the primary consulting physician thought the plaintiff can crawl and crouch at work.) Does the SSA think that if only the plaintiff were thin, she could climb ropes? And that at her present weight and with her present symptoms she can, even occasionally, crawl, stoop, and crouch?

*Id.* at 682 (parenthesis in original).

So the RFC finding is anything but self-evident. But, the ALJ's explanation for how he got from all those severe impairments to his RFC does not provide a "logical bridge" between the two. Essentially, the ALJ rejects the alleged extent of plaintiff's pain by focusing too narrowly on objective medical findings. While many objective findings are mild, there is a cumulative affect that the ALJ seems to have ignored. When assessing if a claimant is disabled, an ALJ must account for the combined effects of the claimant's impairments, including those that are not themselves severe enough to support a disability claim. *Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018). *See also Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014)(when considered in combination with other impairments even a non-severe impairment may become "critical" to the outcome of a claim). In fact, the ALJ noted at one point that he had explained how he considered the combined effect of obesity with plaintiff's degenerative arthritic conditions (R. 16 ("... the undersigned considered the effects of the claimant's obesity in reducing the claimant's residual functional capacity as described below . . . .")), but he never did. *See Allensworth v. Colvin*, 814 F.3d 831, 833 (7th Cir. 2016)(ALJ failed to consider how plaintiff's obesity could aggravate his back, knee and OSA [obstructive sleep

14

apnea] impairments); *Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014)(obesity and a painful, malfunctioning hip and knee); *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004)("A great many people who are not grossly obese and do not have arthritic knees find it distinctly uncomfortable to stand for two hours at a time.").

The plaintiff has many physical impairments, both severe and non-severe, which can be expected to produce generalized pain. Not surprisingly, doctors have prescribed him strong narcotic medication to alleviate that pain. The ALJ calls this conservative treatment, but allegations of pain are "consistent with the strong prescription pain medication . . . ." *Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018); *see also Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (finding doctor's prescription for strong pain medications corroborated claimant's credibility regarding pain). Moreover, in making that "conservative" characterization of plaintiff's treatment, the ALJ appears to have put out of view that plaintiff is no stranger to surgery.

We also do not follow the ALJ's reasoning in regard to doctors having frequently found that plaintiff has only "limited mobility." The ALJ found this "undefined" and thus seemingly dismissed it. Limited mobility would obviously be terribly significant in an individual an ALJ is going to find can walk and stand for most of every day, not to mention occasionally climb ladder, scaffolds, and ropes. Yet, for some reason, it was of no consequence to the ALJ, and the ALJ failed to explain why.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment [Dkt. #16] is granted and this case is remanded to the Commissioner.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/25/21